UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARZEL LEE FOSTER, III,

        Plaintiff,                    Case No. 2:14-cv-11437
                                        Judge Stephen J. Murphy
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15), DEEM MOOT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 22) and GRANT
DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT (DE
23)</u>**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **DEEM MOOT** Defendant's motion for summary judgment, **GRANT**

Defendant's amended motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**     **REPORT**

     Plaintiff, Arzel Lee Foster, III, brings this action under 42 U.S.C. §§ 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income.  This

matter is before the United States Magistrate Judge for a Report and
Recommendation on Plaintiff's motion for summary judgment (DE 15), the
Commissioner's cross motion for summary judgment (DE 22), the Commissioner's
amended cross motion for summary judgment (DE 23), Plaintiff's reply (DE 24)
and the administrative record (DE 11).

### A.    Background

Plaintiff filed his application for Supplemental Security Income (SSI) on
October 25, 2011, alleging that he has been disabled since March 1, 2008, at age
56.  R 157-162, 170-172.  Plaintiff alleges disability as a result of: a brain tumor,
blurred vision, a mild stroke, a mild heart attack, optic nerve damage, limited use
of his left side, high blood pressure, bronchitis, breathing problems, prostrate
problems, severe arthritis, and severe gout.  R at 173-185.  Plaintiff's application
was denied initially on January 25, 2012.  R at 75-78, 79, 80-83.

On March 30, 2012, Plaintiff sought a *de novo* hearing before an
Administrative Law Judge ("ALJ").  R at 84, 85-87, 186-187, 188-193.  ALJ
Michael Wilenkin held hearings on May 7, 2013 and July 18, 2013, at which
Plaintiff appeared without counsel (R at 56-64, 65-74, 101), and on October 17,
2013, at which Plaintiff appeared with counsel, along with vocational expert
("VE") Elizabeth Pasikowski (R at 21-55, 99, 132).  On November 12, 2013, ALJ
Wilenkin issued a recommended decision, concluding that Plaintiff had not been

2

under a disability within the meaning of the Social Security Act since October 25, 2011, the date his application was filed.  R at 9-20.

On December 16, 2013, Plaintiff requested review of the recommended decision.  R at 7-8.  On February 12, 2014, the Appeals Council denied Plaintiff's request for review.  R at 1-6.  Thus, ALJ Wilenkin's decision became the Commissioner's final decision.[1]

Plaintiff then timely commenced the instant action on April 8, 2014.  DE 1.

**B.    Plaintiff's Medical History**

Plaintiff alleges that he has been disabled since March 1, 2008.  R at 157. Plaintiff's medical records span the period from November 13, 1995 to October 10, 2013.  R at 201-383 (Exhibits 1F-15F).  Among those the ALJ reviewed and cited are:

- November 29, 2010 records of Cardiovascular Associates, P.C. (R at 209)
- September 26, 2011 records of Cardiovascular Associates, P.C. (R at 205)

---

[1] ALJ Wilenkin's November 12, 2013 decision is titled a "Recommended Decision."  *See* R at 9, 11.  "Although an administrative law judge will usually make a decision, the administrative law judge may send the case to the Appeals Council with a recommended decision based on a preponderance of the evidence when appropriate."  20 CFR § 416.1453(d) ("Recommended decision."). However, given that the final paragraph is labeled "Decision," R at 16, the Appeals Council's *denial of the claimant's request for review* and its statement that "[I]t is clear from the decision that it is the Administrative Law Judge's final decision" (R at 1), it appears to the Undersigned that the ALJ's "Recommended Decision" was simply mislabeled.  *See* Social Security Administration Hearings, Appeals and Litigation Law Manual (**HALLEX**), I–2–8-15 C.1 (Mar. 2, 2015).

- November 4, 2011 records of Sinai Grace Hospital (R at 215-216, 219)
- November 15, 2011 records of Hicham Krayem, M.D. (R at 344-345)
- November 2, 2012 records from St. John Providence Hospital (R at 239-261)
- February 17, 2013 records from Sinai-Grace Hospital (R at 317-319)
- March 9, 2013 Consultative Examination Report of Atul Shah, M.D. (R at 335-343)
- September 17, 2013 records from Lourdes Andaya, M.D. (R at 369-372)

R at 14-15.

The Undersigned makes particular note of medical records from **2011** which indicate that Plaintiff: complained of headaches and blamed morphine (R at 207); admitted to non-compliance with medication (R at 205); had an EKG/stress test which showed "fair exercise fitness level," (R at 222); reported "acute onset of mild respiratory distress with difficulty in breathing," (R at 225-226); but had no demonstration of airspace disease (R at 232). During **2012**, a chest x-ray showed no acute cardiopulmonary process (R at 297) and a cardiology consultation noted, "patient is not very willing to cooperate with the probation of history[,]" (R at 251). Plaintiff was brought to the emergency room in police custody at Providence Hospital on November 2, 2012. A record from that visit indicates that, "The patient is very, very difficult and noncompliant, stubborn and [does] not like to follow the advice of doing that test and taking the [blood pressure] medication." (R

at 239). Moreover, other records indicate that, during **2013**, Plaintiff "stopped taking his blood pressure medication 2 weeks ago because he did not like the way it made him feel[,]" (R at 266). During this time-frame he went to the ER *to be evaluated for tuberculosis*, but there is no indication of his having been *diagnosed* with the disease, although it is listed as "suspected" and "possible" (R at 330, 332-333); instead, a chest x-ray "revealed no acute processes" and a CT scan of his thorax indicated no more than mild cardiomegaly and possible signs *of pneumonia* (R at 330, 325). He was admitted as an inpatient and appears to have been put in isolation as a precaution, while awaiting an infectious disease consultation. (R at 330). Nevertheless, on March 9, 2013, Plaintiff self-reported a recent diagnosis of tuberculosis; and claimed that he had "started his TB medications in the hospital, but . . . left against the advice of CDC because of a family emergency[.]" The internal medicine report from this visit lists an impression of tuberculosis, apparently based upon the medical history given by the patient, noting that he "has been advised to take medications and is waiting to take those now." R at 335, 337).[2]  Plaintiff was also diagnosed with gout and osteoarthritis (R at 355, 359-360).

### C.    Hearing Testimony

---

[2] Remarkably, Plaintiff was allegedly out and about with a highly contagious, deadly disease, for which he unilaterally delayed treatment and averted quarantine.

### 1.  Plaintiff's Testimony Regarding His Education and Work History

Plaintiff testified at the October 17, 2013 hearing.  R at 25-48.  During 1996 and 1997, he was working in masonry.  R at 45, 25-26.  Plaintiff stated that he last worked in <u>2004-2005</u> as a masonry contractor in what is apparently a family business.  R at 25-26, 44-45.[3]  He stopped working because of his health.  R at 26.

His source of income includes help from family and getting monthly food stamp assistance of $200.00.  R at 39.  Plaintiff has master's degrees in engineering management, economics, international economics and civil engineering.  His last degree was awarded in <u>2008 or 2009</u>.  R at 47-48.

### 2.  Vocational Expert Testimony

VE Elizabeth Pasikowski also testified at the October 17, 2013 hearing.  R at 48-54.  The VE characterized Plaintiff's description of his recent past work as: (1) a cement mason, skilled, heavy; (2) a general contractor, skilled, light; and, (3) a board member, skilled, sedentary.  R at 48.

### D.  The Administrative Decision[4]

---

[3] Plaintiff testified that he has been working with the IRS on his tax records for 1981 to 1995.  R at 44-45; *see also* R at 165 (Certified Earnings Records).
[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

ALJ Wilenkin rendered his decision on November 12, 2013.  R at 9-20. At Step 1, he found that Plaintiff had not engaged in substantial gainful activity since October 25, 2011, the date of his application.  R at 13.

At Step 2, he found that Plaintiff had: the severe impairments of degenerative arthritis with complaints of multiple joint pain, gouty arthritis; reported left arm weakness secondary to an old cerebrovascular accident ("CVA"), not supported by the medical evidence; essential hypertension and coronary obstructive pulmonary disease ("COPD").

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R at 13.

---

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2em

At Steps 4 and 5, which were, unfortunately, not clearly separated and distinguished by the ALJ,  he found that Plaintiff was capable of performing past relevant work (PRW) as a board member, as a civil engineer and as an economist, noting that such work did not require the performance of work-related activities precluded by Plaintiff's RFC.  R at 16.  He further found that Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work.  R at 13-16.  Based upon the VE's testimony, he noted that "the claimant's education and acquired work skills would transfer to a significant number of skilled sedentary positions (2,700) currently existing in the regional economy including public works commissioner or clerk, government clerk and civil engineer." *Id*.

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997));

*see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his motion for summary judgment, Plaintiff identifies the issues for review as follows: (1) Is there substantial evidence in the record to support the ALJ's finding that Plaintiff has the RFC to perform his PRW? and (2) Is there substantial evidence in the record to support a finding that Plaintiff's unpaid, volunteer work as a board member and community activist is past relevant work as defined by the Social Security Act?  DE 15 at 5 (emphasis added).  Both of these issues relate to the Step 4 analysis.  Plaintiff expressly stated that he does not challenge the ALJ's finding at Step 3 that "Foster's [RFC] is restricted to the sedentary exertional level." DE 24 at 9.

With respect to the ALJs finding that he could still perform his PRW, Plaintiff contends that the ALJ did not comply with SSR 82-62, 1982 WL 31386 (SSA), which reads, in relevant part:

In finding that an individual has the capacity to perform a past
relevant job, the determination or decision must contain among the
findings the following specific findings of fact:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the
   past job/occupation.
3. A finding of fact that the individual's RFC would permit a
   return to his or her past job or occupation.

The Commissioner opposes Plaintiff's motion, asserting that substantial

evidence supports the ALJ's finding that Plaintiff could do his PRW.  The

Commissioner further argues that even if Plaintiff could not do his PRW, and even

if the ALJ failed to fully comply with SSR 82-62, any error by the ALJ was

harmless, because the ALJ went on to perform a Step 5 analysis and found many

other jobs Plaintiff could perform.  DE 23 at 12-15.

The Undersigned will address each of the salient points in these arguments

in turn.

### 1.      Comparing RFC with PRW

Residual functional capacity (RFC) is defined as the "'most [a claimant] can

still do despite [the claimant's] limitations.'"  *Sullivan v. Commissioner of Social*

*Sec.*, 595 F.App'x 502, 505 (6th Cir. 2014) (quoting 20 C.F.R. 404.1545(a)(1)).  As

noted above, the ALJ found that Plaintiff has the RFC to perform the full range of

sedentary work.  R at 13.

The ALJ also found that Plaintiff is capable of performing his PRW as a board member, as a civil engineer and as an economist, concluding that this work does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 416.965).  R at 16.  Generally, PRW is defined as "'work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.'"  *Wright-Hines v. Commissioner of Social Sec.*, 597 F.3d 392, 395-396 (6th Cir. 2010) (quoting 20 C.F.R. § 404.1560(b)(1)).

In this case, Plaintiff essentially challenges the adequacy of the ALJ's comparison of Plaintiff's RFC with the demands of his PRW.  By way of background, the Social Security Administration ("SSA") "will compare [the RFC] assessment, which [it] made under paragraph (e) of this section, with the physical and mental demands of [Plaintiff's] past relevant work.  *See* paragraph (h) of this section and § 416.960(b).  If [Plaintiff] can still do this kind of work, [the SSA] will find that [Plaintiff is] not disabled."  20 C.F.R. 416.920(f).

With respect to "Comparing RFC with the Physical and Mental Demands of Past Relevant Occupations," SSR 82-62 provides, in part:  "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily

performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'"

### 2.    Unpaid work

Plaintiff contends that Plaintiff's volunteer *work* was not "work," because "there is no evidence it was done for gain or profit, the duration, or the relevance of the work."  DE 15 at 9.  In response to this argument, the Commissioner cites 20 C.F.R. § 416.972(b).  DE 23 at 13.  This regulation provides:  "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work ***usually*** done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 416.972(b) (emphasis added).

Thus, work activity can be gainful even if not done for pay or profit. Moreover, working as a civil engineer or working as an economist are positions usually done for pay or profit, and serving as a board member may be done for pay or profit.

### 3.    Adequate information

Plaintiff claims that "there is no evidence in the record to support the finding that he can do the volunteer work as a board member, economist [sic] which Foster never testified he performed, or a civil engineer."  DE 15 at 9.  Defendant argues that "[t]he ALJ had adequate information on Plaintiff's [PRW][,]" DE 23 at 13-14, and the Court should agree.

During the May 7, 2013 hearing, Plaintiff testified, "I run a business and I'm trying to get back to work being a general contractor and civil engineer." R at 73. Then, during the October 17, 2013 hearing, Plaintiff testified that he likes to read books on engineering, renovation and green technology. R at 32. When asked about involvement with organizations or groups or church, etc., Plaintiff testified that he had engaged in ministry at his church, "am active with [Detroit's] City Council" and "I'm very active in community organizations," such as the Transit Authority and the Water Board Authority, which included reviewing regulations for the latter. R at 42-43. He described himself as being "very active with [the Seven Mile Transit Authority] *for the last couple of years*...." R at 43 (emphasis added). Plaintiff explained that, when he was able to attend meetings, he goes through regulations, modifies some of the things that are wrong and/or considers problems facing those in the City of Detroit versus problems facing those in Oakland County. R at 43. When queried if he was appointed to these positions by the city or county governments, Plaintiff further explained that, "I was asked. I was elected by the different, each organization because...as an activist I was called and asked *because I did it in college*." R at 43 (emphasis added). This record leaves little doubt that Plaintiff has done work which is "usually done for profit"—as required by 20 C.F.R. § 416.972(b) —and which lasted long enough for [him] to

learn to do it.'" *Wright-Hines v. Commissioner of Social Sec.*, 597 F.3d 392, 395-396 (6th Cir. 2010) (quoting 20 C.F.R. § 404.1560(b)(1)).

At the October 17, 2013 hearing, the VE classified Plaintiff's board memberships as "skilled, sedentary." R at 48. After confirming with Plaintiff that this was unpaid work, the ALJ asked the VE whether any of the skills which were required in Plaintiff's past work would be readily transferrable to sedentary jobs. The VE responded, "Certainly the past work combined with the education. The civil engineering portion of it combined with the general contractor." R at 48-49; *see also* R at 53.

In addition, the VE testified that Plaintiff's past educational background–and the fact that he had so recently earned some of these degrees –would provide Plaintiff with sufficient intellectual and economically viable skills that could be utilized in the performance of work that exists at a sedentary level of exertion. Plaintiff's self-described history as a contractor increased the value, as did the public works vocational portion of it. R at 52. The VE identified the appropriate jobs as being public works commissioner clerk, government clerk, and civil engineering clerks. R at 52-53.

### 4. Adequate findings of fact

In determining that Plaintiff is capable of performing his past relevant work as a board member, as a civil engineer and as an economist, the ALJ explained:

> The claimant's board memberships in the city council as a civil engineer and as an economist were categorized as unpaid skilled sedentary positions.  The [VE] testified that the ***claimant's education and acquired work skills would transfer to a significant number of skilled sedentary positions*** (2,700) currently existing in the regional economy including public works commissioner or clerk, government clerk and civil engineer.
>
> In comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as ***actually and generally performed***.

R at 16 (emphasis added).

With respect to the "specific findings of fact" which the ALJ's decision "must contain" under SSR 82-62,  the ALJ made a clear finding as to Plaintiff's RFC, and likewise made a clear finding that the RFC would permit a return to his past job or occupation. Plaintiff contends, however, that the ALJ failed to make the specific factual finding required in subpart 2 of SSR 82-62, namely, "A finding of fact as to the physical and mental demands of the past job/occupation." Since I am unable to locate such a finding in the ALJ's opinion, this argument is well-taken, and could provide a basis for remand. *See, Nimick v. Sec'y of HHS,* 887 F.2d 864 (8th Cir. 1989); *Wilcox v. Comm'r of Soc. Sec.,* 2014 U.S. Dist. LEXIS 114830 (E.D. Mich. August 19, 2014) (Duggan, J., *in dicta*).  Nevertheless, I find that this error is harmless, for the reasons stated below; therefore, remand is unnecessary, as it is unlikely to change the result.

16

Before going on to address the issue of harmless error, however, I do note that the ALJ's Step 2 finding listed only severe impairments of a physical nature – such as arthritis, left arm weakness, hypertension and chronic obstructive pulmonary disease (COPD) – and concluded that these impairments "result in more than minimal functional limitations." R at 13. With respect to physical demands and functional limitations, perhaps Plaintiff is looking for a discussion by the ALJ of Plaintiff's own ability to sit, stand, walk, lift and/or carry, etc. *See* SSR 82-62, 1982 WL 31386, *2 (SSA) ("Since the severity of the impairment(s) must be the primary basis for a finding of disability, evaluation begins with a determination of the claimant's functional limitations and capacities to sit, stand, walk, lift, carry, etc."). The ALJ did question Plaintiff about these types of activities during the hearing. *See* R at 33-39. Furthermore, while the ALJ did not find that Plaintiff had severe impairments which were mental in nature, the ALJ's RFC discussion made note of a November 2012 impression of "[a]nxiety, neurosis and panic episode with underlying phobia and psychological disorder, cannot be ruled out[.]" R at 249, R at 15. In addition, as discussed above, the ALJ asked the VE about Plaintiff's transferrable skills. R at 49, 53.

Moreover, the ALJ found, as noted above, that Plaintiff "is able to perform [his PRW] as actually and generally performed." R at 16. Thus, the Court could agree with the Commissioner that the ALJ made significant findings of fact

17

regarding Plaintiff's past relevant work, or at least gave these issues due consideration, notwithstanding the fact that he failed to make a specific factual finding required by SSR 82-62 as to the "physical and mental demands of the past job/occupation."  DE 23 at 14.

### 5.    Harmless error

As previously noted, <u>Plaintiff himself acknowledges</u> in his reply brief that, "The evidence supports the ALJ's finding that Foster's [RFC] is restricted to the sedentary exertional level."  DE 24 at 9.  Thus, Plaintiff's motion really challenges the ALJ's conclusion that Plaintiff can perform certain PRW.

However, even if the ALJ erred in his Step 4 determination that, given his RFC, Plaintiff was capable of performing certain PRW, Plaintiff has not shown that the omission was harmful.  *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Here, the Commissioner argues and the Undersigned agrees, that the ALJ essentially proceeded to Step 5.  Specifically, within his conclusion that Plaintiff could perform his past relevant work as a board member, civil engineer and economist, the ALJ went further and, relying upon the VE's testimony, noted that Plaintiff's "education and acquired work skills would transfer to a significant number of skilled sedentary positions . . . currently existing in the regional

economy including public works commissioner or clerk, government clerk and civil engineer." R at 16.

The VE testified about the number of public works commissioner clerk, government clerk and civil engineering clerk jobs in the State of Michigan and nationally. Specifically, there were 460 regional, 1,200 statewide and 162,000 nationally for sedentary level civil engineering positions. R at 52-53. Although the ALJ's decision refers to a 2,700 State of Michigan figure, which appears to have included the VE's calculation for *non-sedentary* positions (R at 16), it remains that, "even if [Plaintiff] could not do his past relevant work, Plaintiff could do a significant number of other jobs existing in significant numbers in the national economy." DE 23 at 15.

Any error at Step 4 is harmless in light of the ALJ's disguised Step 5 finding. *See Gaskin v. Commissioner of Social Sec.*, No. 14-10859  2015 WL 268335, 9 (E.D. Mich. Jan. 21, 2015) (Roberts, J., accepting report and recommendation of Binder, M.J.) ("I suggest that any legal error at step four is harmless in view of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy that claimant could still perform.") (citation omitted); *Dunnett v. Commissioner of Social Sec.*, No. 12-10930, 2013 WL 4604445, 15 (E.D. Mich. Aug. 29, 2013) (Zatkoff, J., adopting report and recommendation of Randon, M.J.) ("The ALJ did not end her analysis at step

four—she continued to step five, and found that Plaintiff could perform other work that existed in significant numbers in the national economy. As such, an error at step four— *if any*—was harmless.').  In sum, as the Commissioner argues (DE 23 at 15), "[r]emand would not change that Plaintiff can do many existing jobs, even if he could not do [PRW]."  In other words, if he cannot do work as a board member, civil engineer or economist, then he can do work as a public works commissioner or clerk, government clerk or civil engineer.  Thus, any omission in the Step 4 findings regarding his ability to perform PRW is harmless.

### G.   Conclusion

It is the claimant's burden to prove his RFC.  *See* 20 C.F.R. § 416.912(a);[5] *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).[6]  Plaintiff has not satisfied his burden to challenge the ALJ's RFC finding.  Thus, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **DEEM MOOT** Defendant's motion for summary judgment,  **GRANT** Defendant's amended motion for

---

[5] "In general, you have to prove to us that you are blind or disabled."  20 C.F.R. 416.912(a).

[6] "If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past."  *Foster*, 279 F.3d at 354 (citing 20 C.F.R. § 404.1520(e)).

summary judgment, and **AFFIRM** the Commissioner of Social Security's

decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 23, 2015                  s/Anthony P. Patti
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2015, electronically and/or by U.S. Mail.

                                      s/ Michael Williams
                                      Case Manager to the
                                      Honorable Anthony P. Patti